**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**ALONZO DAVIS**                                                                                         **PLAINTIFF**

**v.**                                                                      **CIVIL ACTION NO. 5:06cv113-DCB-JMR**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY**                                         **DEFENDANT**

## REPORT AND RECOMMENDATION

This cause comes before this Court on Plaintiff's Motion [8-1] for Judgment on the Pleadings as well as Defendant's Motion [10-1] for an Order Affirming the Commissioner's Final Decision. Both Motions are accompanied by Memorandums [9-1], [11-1] in Support. Plaintiff has also filed a Rebuttal [13-1] to Defendant's Motion [10-1] to Affirm. Having considered the Motions [8-1], [10-1], the Memorandums in Support [9-1],[11-1], the Plaintiff's Rebuttal [13-1], the record of proceedings below, along with the record as a whole and the relevant law, this Court finds that Plaintiff's Motion [8-1] for Judgment on the Pleadings should be denied. The Court further finds that Defendant's Motion [10-1] for an Order Affirming the Commissioner's Final Decision should be granted.

## ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his current applications for Social Security disability insurance benefits under Title II of the Social Security Act and Supplemental Security Income disability benefits under Title XVI of the Act on December 14, 2000. (Tr. 414-416, 686-688). Originally, Plaintiff alleged the onset of disability as May 1, 1996.[1] However, Plaintiff amended that date to January 27, 2000.

---

[1] Plaintiff filed a previous application on November 6, 1998 which was denied in January of 2000. Plaintiff did not appeal the denial.

Plaintiff's applications were denied initially and on reconsideration (Tr. 357-360, 371-378, 381-384,690-697); thereafter, Plaintiff requested a hearing. (Tr. 385).

On August 13, 2002, Plaintiff appeared with counsel and testified at a hearing before an Administrative Law Judge ("ALJ"). (Tr. 744-777). A Vocational Expert ("VE") also offered testimony at the hearing. (Tr. 772-776). On August 19, 2002, the ALJ denied Plaintiff's applications finding that Plaintiff did not possess a severe impairment (Tr. 361-370). On January 23, 2003, the Appeals Council ("AC") vacated the ALJ's original decision and remanded the case for additional administrative proceedings. The Appeals Council sought further consideration from the ALJ to both Plaintiff's obesity and Plaintiff's residual functional capacity ("RFC"). (Tr. 405-407).

On October 13, 2004, the ALJ held a second hearing in which testimony was taken from the Plaintiff as well as a second VE. (Tr. 708-743). On November 20, 2004, the ALJ issued a new decision finding that Plaintiff was not disabled due to Plaintiff's RFC for a range of work, which precluded performance of Plaintiff's past work, but allowed the Plaintiff to perform other jobs that existed in significant numbers in the national economy (Tr. 18-34). This became the final decision of the Commissioner when on June 16, 2006, the AC denied Plaintiff's request that they review the ALJ's second decision. (Tr. 11-13). Plaintiff filed the instant Complaint [1-1], on August 14, 2006, pursuant to 42 U.S.C. 405(g) of the Social Security Act, to obtain judicial review of a "final decision" of the Commissioner of Social Security.

## FACTS

Plaintiff, born in 1960, was forty-one years old when last insured for disability insurance benefits and was forty-four when the ALJ issued his initial decision. (Tr. 66, 749, 79, 210). Plaintiff has a GED and his past work experience includes jobs as a farm laborer, a farm machinery operator, including trucks and tractors, a member of a cotton ginning crew, and a crop duster assistant. (Tr.

223-230). The VE testified that Plaintiff's farm machine operator job was heavy semi-skilled work, the crop duster assistant job was medium semi-skilled work, and the cotton gin work was light semi-skilled work. (Tr. 733).

Plaintiff's medical record contains a multitude of notes from Dr. Estess examinations of Plaintiff during the period from January 2000 through August 2004 (Tr. 522-547, 604-667).[2] These notes indicate occasions of elevated blood sugar readings with various illnesses such as a sore throat, sinus congestion, and an upper respiratory infection, but generally reflect that Plaintiff was in fair health clinically. (Tr. 522, 524, 527, 531, 535, 540, 542, 543, 544, 546, 547, 604, 605, 609, 612, 613, 614, 615, 619, 620, 624, 628, 629, 630, 631, 632, 634, 637, 638, 642, 646, 648, 649, 650, 652, 653). Plaintiff's blood pressure readings during these office visits indicate that Plaintiff's hypertension was controlled with medication. (Tr. 522-547, 604-610, 617-653).

In December 2000, Plaintiff was seen for complaints of abdominal pain, gas, a history of ulcers and having passed blood. (Tr. 470, 541). Plaintiff was hospitalized for anemia, received several units of blood, and remained in the hospital for a period of five days (Tr. 469). An Esophagogastroduodenoscopy was normal, and the upper and lower endoscopy resulted in no major findings. (Tr. 469, 486-487). However, a colonoscopy showed large internal hemorrhoids and diffused melanosis. For these conditions, Plaintiff was recommended to utilize several different stool softening and bowel cleansing products. (Tr. 480). After his discharge from the hospital, Plaintiff reported having good bowel movements. (Tr. 505).

In July 2002, Dr. Estess prepared an RFC questionnaire regarding Plaintiff's diabetes. (Tr.

---

[2] A great deal of the evidence contained in the record represents Plaintiff's medical condition prior to January 2000, the date when his prior claims were denied and before his the amended date of the alleged onset of disability (Tr. 134-163, 244-330, 506-514, 548-570, 573-582, 654-667).

583-588). Dr. Estess reported that Plaintiff had non-insulin dependant diabetes mellitus and hypertension. Dr. Estess further noted that Plaintiff visited his offices occasionally regarding his blood sugar and blood pressure levels. (Tr. 583). Dr. Estess assessed that Plaintiff could sit for no more than two hours at one time before needing to rise; that Plaintiff could sit for no more than two hours during an eight-hour working day; that Plaintiff could stand for only thirty minutes at a time before needing to sit down or walk around; that Plaintiff could stand for less than two hours during an eight-hour working day; and that Plaintiff needed to avoid concentrated exposure to temperature extremes, high humidity, fumes, odors, dusts, gases, perfumes, cigarette smoke, solvents, cleaners and chemicals (Tr. 585, 587). Dr. Estess determined that Plaintiff could only lift ten pounds and that Plaintiff could only perform that task occasionally. Dr Estess also determined that Plaintiff could never climb ladders, twist, stoop, crouch or climb stairs. (Tr. 586). Dr. Estess further determined that Plaintiff would miss more than four days a month due to his impairments or treatments. (Tr. 588).[3]

On September 30, 2003, Plaintiff was examined by Dr. Rose. (Tr. 589-596). Dr. Rose reported that Plaintiff fell asleep during his interview prior to the examination. Plaintiff informed Dr. Rose that he had been a diabetic since high school and had been off his diabetes medication for a period of nineteen years, but had been back on the medication since 1998. (Tr. 589). Plaintiff also reported bouts of high blood pressure for the previous thirteen years. Id. Plaintiff reported that he remained seated throughout most of the day except for the period when he walks for about thirty minutes. (Tr. 590). Dr. Rose determined that Plaintiff had no impairment-related physical limitations and that Plaintiff's sitting and standing were not adversely affected. However, Dr. Rose further

---

[3]Dr. Estess offered identical opinions in July of 2003. (Tr. 668-674). However, Dr. Estees indicated that as a result of Plaintiff's obesity, he could only stand for two hours and his ability to sit was not affected (Tr. 675-676).

determined that Plaintiff's postural activities were limited and that working at heights or around moving machinery were to be restricted. (Tr. 593-596).

On March 15, 2004, Dr. Blaylock examined the Plaintiff (Tr. 597-599). Plaintiff weighed roughly 318 pounds, and his blood pressure was 120/70. Plaintiff possessed good grip strength and upper extremity strength although Dr. Blaylock questioned Plaintiff's overall efforts in performing the exercises. Id. Plaintiff had normal dexterity and normal cervical flexion and extension. Dr. Blaylock determined that Plaintiff's complaints were not conclusive with his physical findings (Tr. 599). After examination, Dr. Blaylock determined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, that he could stand for at least two hours in an eight-hour workday, and that these impairments did not impact Plaintiff's ability to sit. (Tr. 600-601). Dr. Blaylock further determined that Plaintiff had limited use of his lower extremities and had postural limitations. (Tr. 601). Dr. Blaylock also determined that Plaintiff could reach, handle and use his fingers frequently and that Plaintiff's environmental limitations included the need to avoid hazards such as heights and machinery. (Tr. 602-603).

During the October 2004 hearing before the ALJ, the ALJ asked the VE if a person of Plaintiff's age, educational and work background could perform jobs in the national economy if he were limited to lifting twenty pounds occasionally and less than ten pounds frequently; standing for only two hours in an eight-hour day; using his lower extremities for pushing, pulling or operating foot controls or levers; never climbing, crouching or crawling; only occasionally balancing, stooping or reaching in all directions; and should not work around hazards, extreme temperatures, exposure to excessive chemicals, dust, fumes and humidity (Tr. 736-737, 739).

The VE testified that there were such jobs and provided three examples of sedentary jobs – a surveillance system monitor, identification clerk, and registration clerk (Tr. 738-740). The VE

testified that there were about 50,000 surveillance system monitor jobs in the national economy and about 1,000 such jobs in the region (Tr. 738); about 15,000 semi-skilled, sedentary identification clerk jobs in the national economy and 200 of these jobs in the region (Tr. 740); and, about 35,000 registration clerk positions nationally and 400 of these jobs in the region (Id.).

## STANDARD OF REVIEW

On review, the ALJ's determination that a claimant is not disabled will be upheld if the findings of fact upon which it is based are supported by substantial evidence on the record as a whole, and it was reached through the application of proper legal standards. 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The United States Supreme Court defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," being "more than a scintilla, but less than a preponderance." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

All evidentiary conflicts are resolved by the Commissioner, and if substantial evidence is found to support the decision, then the decision is conclusive and must be affirmed, even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). On appeal, the court may not re-weigh the evidence, try the case *de novo*, nor substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence preponderates against the decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## ANALYSIS

Plaintiff first argues that the ALJ failed to properly evaluate Plaintiff's severe impairments as directed by the AC's order of remand. *See* Plaintiff's Memorandum [9-1] p. 8. In vacating the ALJ's decision and remanding this case, the AC directed the ALJ to further evaluate Plaintiff's obesity and consider its impact in combination with other impairments as it relates to Plaintiff's RFC

(Tr. 406-407). Upon remand, the ALJ found that Plaintiff's obesity and non-insulin dependent diabetes mellitus were severe impairments due to their impact on his ability to perform basic work activities. (Tr. 23-27, 33 at Finding 3). The ALJ summarized and considered all of the evidence of record in reaching this determination. (Tr. 23-27). The record indicates that Plaintiff has been obese throughout the entire period covered by his current applications. Although Plaintiff has been diagnosed with hypertension, his blood pressure readings have generally been within the normal range of a person with Plaintiff's weight. On numerous occasions, Dr. Estess indicated that Plaintiff was doing fairly well clinically while on his medication. (Tr. 522-547, 583-588, 604-610, 617-653, 668-674).

Throughout the period under review, Plaintiff's non-insulin dependent diabetes mellitus was treated mainly by administering oral medication. Plaintiff's blood sugar levels were elevated for a period of several months in 2001. (Tr. 520, 533-538). Defendant points out that during the periods before and after this spike in elevated levels, Plaintiff's glucose levels were generally in a range of 140 or less. (Tr. 520, 524, 528, 530, 544, 547, 549, 617-631). The ALJ noted that Plaintiff's non-insulin dependent diabetes mellitus was controlled on oral medication and that the record did not indicate that Plaintiff's diabetes resulted in any diabetic retinopathy. (Tr. 29, 30).

Citing SSR 00-1p, Plaintiff points out that limitations due to obesity may be exertional, postural, manipulative or environmental. *See* Plaintiff's Memorandum [9-1] p.9. As will be discussed in greater detail below, the ALJ's RFC finding included exertional, postural, manipulative or environmental limitations, and the record shows that these limitations were primarily related to Plaintiff's obesity and not his diabetes, hypertension or any other alleged impairment.

Plaintiff further argues that the ALJ failed to support his assessment of Plaintiff's RFC with appropriate rationale and specific references to the medical evidence as ordered by the AC on remand.

*See* Plaintiff's Memorandum [9-1] p.12.  Plaintiff argues that the ALJ overlooked the two consultive physical examinations of the Plaintiff performed by Dr. Rose and Dr. Blaylock. *Id*. p. 13.  Defendant counters arguing that in making his determination, the ALJ provided detailed rationale for his decision and specifically referred to the medical evidence of record. (Tr. 23-31).  Dr. Estess opined that Plaintiff could stand for a total of two hours in an eight-hour workday (Tr. 585, 671, 675). The ALJ included this limitation in Plaintiff's RFC.  Although the record is devoid of any documents indicating any diabetic neuropathy, Plaintiff's obesity has an impact the length of time that he can stand or walk.  Dr. Estess determined that Plaintiff should avoid concentrated exposure to various pulmonary irritants including fumes, odors, dust, gases, perfumes, cigarette smoke, chemicals and cleaners. (Tr. 587, 673, 677).  Although the record did not indicate a respiratory condition, and Dr. Estess' office notes showed that Plaintiff's lungs were clear, the ALJ included a similar limitation in his final evaluation of Plaintiff's RFC.  Dr. Estess assessed that Plaintiff's additional limitations included an inability to sit for more than two hours a day and that Plaintiff's obesity was not a factor in his inability to sit. (Tr. 585, 671, 676).  Dr. Estess further assessed that Plaintiff needed to elevate his leg while seated, (Tr. 586, 672) and that Plaintiff would likely miss more than four days of work a month because of his impairments or treatments. (Tr. 588, 674, 678).

The Defendant argues that in evaluating Dr. Estess' assessment, the ALJ properly found that these opinions overstated Plaintiff's limitations.  The weight that is to be given to a medical opinion depends in part upon the extent to which it is supported by relevant evidence in the record and how consistent the opinion is with the record as a whole. See 20 C.F.R. §§ 404.1527(d) and 416.927(d). Defendant argues that the record does not support an opinion that Plaintiff could sit for a mere two hours during an eight-hour workday.  Dr. Estess' office notes indicated that Plaintiff was doing well clinically with respect to his hypertension and diabetes.  More importantly, after their examinations

of Plaintiff, both Dr. Rose and Dr. Blaylock concluded that Plaintiff's ability to sit was not affected by his impairments. (Tr. 594, 601). Furthermore, Defendants point out that Plaintiff, himself, indicated that he sits most of the day except for when he attempts to exercise for thirty minutes. (Tr. 590).

Defendant further argues that there is no clinical indication of a circulatory problem requiring Plaintiff to elevate his legs while seated, nor do any of the medical records document that Plaintiff was advised by Dr. Estess, or any other physician, to do so. *See* Defendant's Memorandum [11-1] p. 15. Furthermore, the Defendant argues that the record does not reflect Plaintiff's need for medical treatment of his impairments that would prevent him from working. *Id.* Defendant points out that the only treatment Plaintiff received for his diabetes and hypertension was taking oral medications, and Dr. Estess indicated that these conditions were fairly well controlled clinically. (Tr. 522-547, 583, 604-667, 669).

Dr. Estess did not indicate that Plaintiff should avoid heights or moving machinery because of his obesity. (Tr. 677). However, both Dr. Rose and Dr. Blaylock indicated a restriction in working at heights or around moving machinery because obesity can negatively impact the ability to move rapidly in order to avoid hazards that arise when working with heights or moving machinery. (Tr. 596, 603). Therefore, in consideration of Plaintiff's obesity, the ALJ included such a restriction in Plaintiff's RFC. (Tr. 33 at Finding 6). Although Plaintiff argues that the ALJ overlooked Dr. Rose and Dr. Blaylock's examinations, Dr. Blaylock's assessment of Plaintiff's RFC is nearly identical to the ALJ's RFC finding. (Tr. 600-603).

The ALJ's final determination was that the Plaintiff had the RFC for sedentary work that allowed for lifting and carrying above the level of sedentary work. However, the ALJ also determined that Plaintiff's RFC provided for various postural, manipulative and environmental restrictions that

limited the range of sedentary work that Plaintiff could perform.[4]  Thus, a VE testified and was presented with a set of hypothetical questions that represent a person of Plaintiff's age, education and vocational experience with the limitations found within Plaintiff's particular RFC. (Tr. 736-737, 739). The VE provided three examples of sedentary jobs that such a person could perform– a surveillance system monitor, identification clerk, and registration clerk (Tr. 738-740).  The VE testified that these three jobs accounted for about 100,000 positions in the national economy and about 1,600 positions in the region (Tr. 738, 740).  The Defendant argues that the ALJ properly relied upon the VE's testimony regarding the presence of jobs that fit within Plaintiff's RFC when considered together with his age, educational level and experience.

The Court finds that the VE's testimony, in response to the ALJ's hypothetical questions, constitutes substantial evidence supporting the ALJ's finding that the Plaintiff was not disabled because he could perform work which existed in significant numbers within the national economy. Defendant submits, and the Court agrees, that the evidence in the medical record, considered as a whole, supports the ALJ's determination of Plaintiff's RFC and constitutes substantial evidence in support of that decision.

Plaintiff further argues that the ALJ erred by relying on the VE's testimony without determining whether the Plaintiff has transferable skills, and without determining whether there are conflicts in the VE's testimony and the Dictionary of Occupational Titles as required by SSR 00-4p.

---

[4] Defendant points out that because this RFC included non-exertional limitations that limited the range of sedentary work Plaintiff could perform, the ALJ could not directly apply the Medical-Vocational Grid rule for sedentary work that reflects a like person of Plaintiff's age, education and work experience to decide whether he was "disabled" or "not disabled" based upon the existence of a significant number of sedentary and light jobs that such a person could perform. *See* 20 C.F.R. §§ 404.1569a(d) and 416.969a(d), 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)(2); Social Security Ruling ("SSR") 82-46c and SSR 83-12.

*See* Plaintiff's Memorandum [9-1] p.1. The Plaintiff is correct is pointing out that the ALJ did not ask the VE if her classification of Plaintiff's past jobs, or any of the jobs proffered at Step Five of the sequential analysis was consistent with the Dictionary of Occupational Titles as mandated by the AC on remand. (Tr. 732-743). Plaintiff raised this issue in his initial Brief in Support of Request for Appeals Counsel Review of the ALJ's decision. (Tr. 698-703). Thus, the issue was before the AC when it denied Plaintiff's request for review finding that it had no reason under the rules to review the ALJ's decision. (Tr. 11-13). The Court does not find that this omission by the ALJ merits remand because the Court finds that the ALJ's final decision is supported by substantial evidence even without the additional testimony of the VE regarding whether the Plaintiff has transferable skills, and whether there are conflicts in the VE's testimony and the Dictionary of Occupational Titles.

## **CONCLUSION**

The court has fully reviewed the entire record on this matter and finds that the Commissioner did not err as a matter of law in reaching the "final decision" in this matter and that the decision is supported by substantial evidence. Accordingly, the Court recommends that the decision of the Commissioner is supported by substantial evidence and should be affirmed. Thus the Court finds that Plaintiff's Motion [8-1] for Judgment on the Pleadings should be denied and that Defendant's Motion [10-1] for an Order Affirming the Commissioner's Final Decision should be granted.

In accordance with the Rules of this Court, any party within ten days after being served a copy of this recommendation, may serve and file written objection to the recommendations, with a copy to the Judge, the U.S. Magistrate Judge and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report

will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal- unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Services Automobile Association*, 79 F.3d 1425 (5th Cir. 1996).

THIS the  25th  day of January, 2008.

s/ JOHN M. ROPER
CHIEF UNITED STATES MAGISTRATE JUDGE
